UNITED STATES DISTRICT COURT

DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2014 NOV 17 PM 3 31

STEPHAN HARRIS, CLERK
CHEYENNE

| | |
|---|---|
| CENTRAL WYOMING NEUROSURGERY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BARTA-ISO AVIATION, EAGLE CREEK AVIATION SERVICES, and JETSTREAM ESCROW & TITLE SERVICE, INC., <br><br> Defendants. | Case No. 13–CV–77–ABJ |

## OPINION AND ORDER GRANTING EAGLE CREEK AVIATION SERVICES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TRANSFERRING CASE TO INDIANA IN LIEU OF DISMISSAL

Eagle Creek's Motion to Dismiss (Doc. No. 50), CWN's opposition (Doc. No. 58) and Barta-Iso's opposition thereto (Doc. No. 61) and Eagle Creek's further reply (Doc. No. 63) have come before the Court for consideration. Having considered the pleadings, the applicable law, the parties' written submissions and materials offered in support of their respective positions, the Court FINDS and ORDERS as follows:

### BACKGROUND

Central Wyoming Neurosurgery (CWN) contracted with Barta-Iso Aviation (Barta-Iso), a New York company, to buy a plane. The next day, Barta-Iso contracted with Eagle Creek Aviation Services (Eagle Creek) to purchase a plane to satisfy CWN's order. In an addendum to the Barta-Iso/CWN Purchase Agreement, Barta-Iso and CWN agreed that Eagle Creek (an Indiana company) would repair the plane. Later Eagle Creek communicated with CWN about

repairs that exceeded the amount of repair costs contemplated in CWN and Barta-Iso's agreement. CWN and Eagle Creek agreed on the additional work that Eagle Creek would perform, and CWN paid Eagle Creek a deposit. Eagle Creek allegedly failed to perform the repairs to the plane and Barta-Iso allegedly failed to deliver the plane to CWN. CWN sued Eagle Creek and Barta-Iso for breach of contract, civil conspiracy, promissory estoppel, and fraud. Eagle Creek moved to dismiss for lack of personal jurisdiction.

Because Eagle Creek lacks minimum contacts with Wyoming, the Court agrees that it lacks personal jurisdiction over Eagle Creek and therefore **GRANTS** Eagle Creek's motion. In lieu of dismissal, the Court **GRANTS** Barta-Iso's request to transfer the case to a court with jurisdiction over the parties.

## FACTS

Drawing all reasonable inferences in favor of Plaintiff CWN, the following facts are from the Complaint and attached exhibits, and the affidavits and exhibits attached to the parties' briefs. This case arises out of an allegedly failed transaction between CWN, the buyer of a plane, Barta-Iso, the seller of the plane, and Eagle Creek Aviation Services, the possessor and repairer of the plane.

CWN is a Wyoming limited liability company with its principal place of business in Wyoming. (Compl. ¶ 1). It is a medical practice comprised of doctors who frequently travel to treat a variety of brain, spinal cord, spinal column, peripheral nerve, and carotid artery abnormalities. (Compl. ¶ 7). CWN wanted to buy a plane to accommodate its doctors' frequent travel. (Compl. ¶ 9). To that end, CWN entered into negotiations with Barta-Iso to purchase a plane. (Compl. ¶13). The negotiations were successful, and on October 16, 2012, CWN contracted with and agreed to pay Barta-Iso $750,000 for a 1980 King Air 200 and $345,000 for repairs to plane (CWN/Barta-Iso Purchase Agreement). (Compl. ¶ 15). At the time CWN

entered into the CWN/Barta-Iso Purchase Agreement, CWN did not know that the day before Barta-Iso had contracted to purchase the King Air from Eagle Creek and that Eagle Creek, not Barta-Iso, possessed the King Air. (Compl. ¶ 14).

An addendum to the CWN/Barta-Iso Purchase Agreement outlined the condition in which Barta-Iso would deliver the King Air to CWN and listed the necessary plane repairs and modifications for which Barta-Iso agreed to pay. (Compl. ¶ 22). More importantly, CWN and Barta-Iso agreed in the addendum that Eagle Creek would perform all King Air repairs as outlined in the CWN/Barta-Iso Purchase Agreement, except painting the King Air. (Compl. ¶ 23). At all times relevant to this case, Eagle Creek retained possession of the King Air in Indiana. (*see generally* Compl.).

The other salient terms of the CWN/Barta-Iso Purchase Agreement contract are these. After signing the contract, CWN agreed to wire $125,000 to the agreed upon escrow agent. (Compl. ¶ 20). CWN would then conduct a logbook review of the plane and, if satisfied, would notify Barta-Iso that it accepted the plane. *Id.* At that point, Barta-Iso would have ninety days to complete the repairs called for under the contract. (Compl. ¶ 21). Once those repairs were finished, CWN and Barta-Iso agreed that within five days, CWN would make full payment, including release of the funds from escrow, and Barta-Iso would deliver the plane. (Compl. ¶ 21).

In October 2012, CWN sent its employees, Jeff Holmes[1] and Richard W. Carney, to Eagle Creek in Indiana review the King Air logbooks. (Compl. ¶ 24). In November 2012, CWN

---

[1] Much of the parties' arguments focus on whether Mr. Holmes was a CWN agent/employee from Wyoming or an owner of Holmes Helicopters located in Oregon, and how his location and association with CWN affects the personal jurisdiction analysis. Plaintiffs proffered an affidavit from Mr. Holmes stating he is a Wyoming resident, was employed by CWN at all times relevant to the instant case, and communicated with Eagle Creek regarding the additional repairs while

sent Carney to review the King Air logbooks again. (Compl. ¶ 25). On November 13, 2012, satisfied the logbooks were compliant with FAA requirements, CWN notified Barta-Iso of its acceptance of the King Air. (Compl. ¶ 27). In accordance with CWN/Barta-Iso Purchase Agreement, CWN wired $125,000 to the escrow agent as instructed. (Compl. ¶ 20).

In mid-January 2013, Eagle Creek notified CWN directly that the King Air needed additional repairs in furtherance of CWN's agreement with Barta-Iso. (Compl. ¶ 32). Eagle Creek sent CWN a quote for $73,834 for the additional work. (Compl. ¶ 33). CWN advised Eagle Creek that it did not approve of all the work described in the quote. As such, Eagle Creek adjusted the amount of work, reduced the quote to $68,806, and resent it to CWN.[2] (Compl. ¶ 34, Exs. H and I). CWN accepted this quote and sent an initialed copy back to Eagle Creek. (Compl. Ex. I). The parties termed the revised and accepted quote the "additional work agreement." On February 1, 2013, CWN wired $34,903, a 50% deposit for the additional work, to Eagle Creek. (Compl. ¶ 35).

Then things went haywire. Eagle Creek allegedly failed to make the repairs within the ninety-day deadline established by the CWN/Barta-Iso Purchase Agreement and allegedly kept the additional work deposit. Further, the escrow agent allegedly released the $125,000 to Barta-Iso even though, according to CWN, the conditions precedent to that release were not satisfied. Further, Barta-Iso allegedly failed to deliver the King Air to CWN and allegedly failed to return

---

residing and working in Wyoming. CWN's Response Brief, Exhibit 1, ¶¶ 2, 3, 7–12. When analyzing a motion to dismiss for lack of personal jurisdiction, the Court must resolve all factual disputes in the plaintiff's favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). As such, for the purposes of this opinion, Mr. Holmes was assumedly a CWN employee acting from Wyoming while communicating with Eagle Creek. For this reason, the Court will not consider Eagle Creek's arguments that it did not communicate with CWN in Wyoming.

[2] Both Eagle Creek quotes list Barta-Iso, not CWN, as the client. (Compl. ¶ 35, Exs. H and I).

CWN's $125,000 purchase deposit. (Compl. ¶¶ 40-42). On that score, CWN sued Eagle Creek and Barta-Iso for breach of contract, fraud, promissory estoppel, and civil conspiracy. CWN also sued Jet Stream, but the Court dismissed Jet Stream for lack of personal jurisdiction. (Doc. No. 35).

Eagle Creek filed a motion to dismiss for lack of personal jurisdiction, arguing that this Court cannot exercise personal jurisdiction over it because it lacks minimum contacts with Wyoming. Additionally, Eagle Creek argues that venue is improper based on the CWN/Barta-Iso Purchase Agreement and the Barta-Iso/Eagle Creek Purchase Agreement. CWN argues that Wyoming has jurisdiction over Eagle Creek because: (1) Eagle Creek solicited CWN, a Wyoming company, and entered into a contract with CWN for additional work to the King Air; (2) CWN sent and Eagle Creek received a $34,903 wired deposit from Wyoming; (3) Eagle Creek and CWN engaged in repeated correspondence and monetary transactions; and (4) CWN suffered injuries as a result of Eagle Creek's breach of contract.

Barta-Iso essentially adopts CWN's argument for personal jurisdiction. Barta-Iso further argues that the Court has ancillary jurisdiction over its cross-claims because CWN's communications and agreement with Eagle Creek for additional work are sufficient to establish minimum contacts and its cross-claims are related. Additionally, Barta-Iso requests that if this Court does not have personal jurisdiction, it transfer the case to an appropriate jurisdiction in lieu of dismissal.

The Court will discuss the rules governing personal jurisdiction before turning to their application in this case. Next, the Court will discuss Eagle Creek's venue argument. Finally, the Court will discuss Barta-Iso's request for a transfer in lieu of dismissal. A brief conclusion follows.

## DISCUSSION

### I. The law of personal jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction. *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995). The plaintiff need only make a prima facie showing of personal jurisdiction if the district court entertains the motion based on the complaint, affidavits, and other written materials. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). The plaintiff can make such a showing by demonstrating facts that if true would support jurisdiction over the defendant. *AST Sports Sci., Inc. v. CLF Distribution, Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). The court takes as true all well-pled facts in the complaint and resolves all factual disputes in the plaintiff's favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Conflicting affidavits are also resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984).

In a diversity action, to establish that a court has personal jurisdiction over a nonresident defendant, the plaintiff must show that the court's exercise of personal jurisdiction would be consistent with both the forum state's long-arm statute and the Due Process Clause. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). Wyoming's long-arm statute permits Wyoming courts to exercise personal jurisdiction over a defendant on any basis that is consistent with the Wyoming or United States constitutions. WYO. STAT. § 5-1-107(a). Because Wyoming's long-arm statute confers the maximum jurisdiction permissible consistent with due process, the personal jurisdiction issue collapses into a single analysis under the Due Process Clause. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).

A federal court sitting in diversity "may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State. . . [and] [t]he defendant's contacts with the forum state [are] such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *World Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant meets the minimum contacts requirement if it "purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Such conduct within the forum State "make[s] being sued there foreseeable so that the defendant could 'reasonably anticipate' the suit." *Fireman's Fund Ins.Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012) (quoting *World Wide Volkswagen*, 444 U.S. at 297).

A nonresident defendant's contacts with the forum state can give rise to either general or specific personal jurisdiction. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (l0th Cir. 2011). General jurisdiction means jurisdiction "over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). To satisfy the minimum contacts test for general jurisdiction, the nonresident defendant's contacts with the forum state must be so continuous and systematic as to render the defendant essentially at home in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). CWN does not allege general jurisdiction, but alleges Wyoming can exercise specific jurisdiction over Eagle Creek based on its minimum contacts with Wyoming.

## II. Specific personal jurisdiction over Eagle Creek

Specific jurisdiction exists over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp.*, 471 U.S. at 472). Thus, for specific jurisdiction, "a court properly focuses on the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (internal quotation marks omitted). In evaluating the "purposefully directed" element, the Tenth Circuit has explained:

> The first element can appear in different guises. In the tort context, we often ask whether the nonresident defendant "purposefully directed" its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant "purposefully availed" itself of the privilege of conducting activities or consummating a transaction in the forum state. In all events, the shared aim of "purposeful direction" doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely "random, fortuitous, or attenuated contacts" with the forum state.

*Dudnikov*, 514 F.3d at 1071. Although CWN alleges both tort and contract causes of action, CWN bases its entire personal jurisdiction argument on the CWN and Eagle Creek additional work agreement. Nonetheless, the Court will look to case law interpreting both the "purposefully directed" and "purposefully availed" requirements.

### a. Purposeful availment based on the Eagle Creek and CWN additional work agreement

The purposeful availment requirement is a safeguard to protect defendants from being haled into a jurisdiction based on "random, fortuitous, . . . attenuated contacts, or the unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 475 (citations and quotations omitted). "Jurisdiction is proper, however, where the contacts proximately result

from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (emphasis in original).

Eagle Creek is not registered to do business in Wyoming, and does not have any offices, personnel, or real or personal property in Wyoming. (Affidavit of Matthew Hagans, Eagle Creek CEO, ¶¶ 4–5). The King Air remained in Indiana throughout all times relevant to this case. Thus, all of Eagle Creek's work was to be performed on the King Air in Indiana. Eagle Creek reached out to CWN, a company with which it was already in contact, to notify CWN that the King Air needed additional work. *See* Compl. ¶ 32 (Eagle Creek contacted CWN directly in January 2013 and represented that it needed additional funds to cover the costs of the repairs *in furtherance of* the [Barta-Iso/CWN Purchase Agreement]." (emphasis added)). To that end, CWN and Eagle Creek entered into an additional work agreement.

CWN relies heavily on this additional work agreement with Eagle Creek to establish Eagle Creek's minimum contacts with Wyoming. The mere existence of a contract with a Wyoming citizen, however, is insufficient to establish the requisite minimum contacts in the forum state. *See Burger King Corp.*, 471 U.S. at 478; *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1287 (10th Cir. 2007); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004). Although agreements alone are not sufficient to establish minimum contacts, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulations and sanctions in the other state for the consequences of their activities." *Marcus Food Co.*, 671 F.3d at 1166 (citations omitted). The Court must examine the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 1166–67.

CWN's argument presents the additional work agreement and corresponding communications in a vacuum, not in the context of the parties' actual course of dealing, which includes their relationships and previous dealings with and through Barta-Iso. It is undisputed that the additional work agreement was the only contract between Eagle Creek and CWN and it contemplated a one-time business deal, not a continuing relationship. Notably in its brief, CWN admits that there was not a continuing business relationship between Eagle Creek and CWN. (CWN Response Brief, pg. 13). Accordingly, CWN's relationship with Eagle Creek is distinguishable from cases finding personal jurisdiction where the parties' agreements proposed a continuing relationship. *See AST Sports Sci., Inc.*, 514 F.3d 1054; *Marcus Food Co.*, 671 F.3d 1159.

CWN first argues Eagle Creek initiated contact with CWN in Wyoming regarding the additional work agreement, which CWN argues is sufficient to establish minimum contacts.[3] Even limited to the facts not disputed by the parties, however, the record demonstrates that Barta-Iso initially introduced Eagle Creek to CWN and Eagle Creek and CWN had been working together pursuant to their separate contracts with Barta-Iso prior to Eagle Creek contacting CWN about additional repairs. Further, CWN's Complaint states that the additional repairs that Eagle Creek proposed were *in furtherance* of the CWN/Barta-Iso Purchase Agreement. (Compl. ¶ 32)

---

[3] In support of its argument, CWN relies on *AST Sports Science v. CLF Distribution Ltd.*, *Pro Axess v. Orlux Distribution*, and *Meyer v. Hatto*. In these cases, unlike the instant case, a third party did not initiate contact between Plaintiff and Defendant and the parties' contracts were not incidental to a separate contract with a third-party non-resident. *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1059 (10th Cir. 2008) ("Especially significant . . . is the fact that Mr. [defendant's president] approached [plaintiff's president] . . . and then formed an ongoing business relationship to facilitate the same."); *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005); *Meyer v. Hatto*, 2008 WY 153, 198 P.3d 552, 556 (Wyo. 2008) (Plaintiffs directly initiated contact with Defendant in Hawaii).

(emphasis added). These facts weaken CWN's argument that Eagle Creek *initiated* contact with CWN in Wyoming.

Next, CWN argues that Eagle Creek's numerous communications with CWN in Wyoming are sufficient to establish Eagle Creek's minimum contacts with Wyoming. The Court must examine both the quantity and quality of Eagle Creek's contacts with the forum state.[4] *OMI Holdings*, 149 F.3d at 1092. In this case, the exact number of Eagle Creek's alleged contacts with CWN is unknown. CWN alleges there were "dozens" of communications between it and Eagle Creek regarding the additional repairs.[5] The record shows, in the least, that CWN and Eagle Creek corresponded about original and revised quotes for additional work, and Eagle Creek accepted a wire transfer of funds from CWN. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999) (analyzing wire transfers along with telephone and other communications). Notably, Eagle Creek's quotes list Barta-Iso as the client, not CWN.

As a general rule, letters and telephone calls are insufficient to establish personal jurisdiction. *Far West*, 46 F.3d at 1077 ("It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts."). In support of its argument that Eagle Creek's communications with CWN are sufficient, CWN asserts, "[i]n proper circumstances, even a single letter or telephone call to the forum state may meet due process standards." *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988).

---

[4] It appears from the record that Eagle Creek and CWN communicated a number of times regarding the King Air prior to any discussions about additional repairs. Because these communications were in furtherance of both parties' separate contracts with Barta-Iso, the Court will not consider them in the Eagle Creek personal jurisdiction analysis.

[5] CWN alleges there were dozens of communications between it and Eagle Creek about the additional work agreement in its response brief. It does not allege the number of communications in its Complaint or provide exhibits showing the communications, other than the quotes and invoice for the deposit. Additionally, as discussed above, Mr. Holmes' affidavit resolved the parties' arguments about whether Eagle Creek actually communicated with CWN in Wyoming regarding the additional work agreement.

> However, the exercise of jurisdiction depends on the nature of those contacts. The existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards. The proper focus for analyzing these contacts is whether they represent an effort by the defendant to purposefully avail itself of the privilege of conducting activities within the forum State.

*Id.* at 1418–19 (internal citations and quotations omitted).

CWN's communications with Eagle Creek furthered CWN and Eagle Creek's existing relationship and resulted in a one-time agreement and one-time wire transfer incidental to work Eagle Creek was already performing for CWN pursuant to Eagle Creek's agreement with Barta-Iso. The communications do not reveal substantial prior negotiations between the parties. The Court is not persuaded that Eagle Creek purposefully availed itself of the privilege of conducting activities in Wyoming by contacting CWN in Wyoming or accepting a deposit for repairs to a plane that Eagle Creek already possessed pursuant to a contract with a New York Corporation. Considering Eagle Creek's communications with CWN about the additional repairs in light of both parties' relationships and contracts with Barta-Iso, the Court finds Eagle Creek's direct contacts with CWN regarding additional work did not create a substantial enough connection between Eagle Creek and Wyoming.

Even considering the additional work agreement and the corresponding communications, (including the wire transfer) together, the Court finds that Eagle Creek's contacts with Wyoming are too attenuated to exercise personal jurisdiction over Eagle Creek. There is no evidence that the fact that CWN was a Wyoming resident was of any consequence to Eagle Creek or that Eagle Creek solicited business from CWN independent of its already ongoing business for Barta-Iso. Further, the contract did not establish a continuing relationship between CWN and Eagle Creek; if it had, the result of the Court's personal jurisdiction analysis would have been different.

As a result, the Court lacks personal jurisdiction over Eagle Creek based on Eagle Creek's contract claims.

### b. Purposefully directed based on CWN's tort claims

CWN asserts that it lost funds due to Eagle Creek's failure to complete the repairs and CWN's injuries arise out of Eagle Creek's activities in Wyoming. Despite these assertions and Eagle Creek's preemptive arguments on the matter, CWN does not address or cite any case law addressing whether, based on Eagle Creek's alleged tortious action, a grant of personal jurisdiction under the Wyoming long-arm statute is proper.[6] The Tenth Circuit applies an "effects test," allowing the exercise of jurisdiction when there is a prima facie showing that the defendant (1) intentionally acted (2) in a manner expressly aimed at Wyoming, with (3) knowledge that the brunt of the injury would be felt in Wyoming. *Dudnikov*, 514 F.3d at 1072 (analyzing *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

"[T]he 'express aiming' test focuses more on a defendant's intentions—where was the 'focal point' of its purposive efforts—while the latter requirement concentrates on the consequences of the defendant's actions—where was the alleged harm actually felt by the plaintiff." *Id.* at 1075. To "expressly aim" conduct, the forum state must be the "focal point of the tort." *Id.* at 1074 n. 9 (quoting *Far West*, 46 F.3d at 1080). "[T]he plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*." *Shrader*, 633 F.3d at 1244 (citations and quotations omitted). CWN failed show that Eagle Creek expressly aimed its conduct at Wyoming, but instead relies solely on the fact that CWN is located in and allegedly suffered in Wyoming by not receiving the King Air. Using the same

---

[6] CWN also failed to raise any arguments that jurisdiction was proper because Eagle Creek was allegedly Barta-Iso's "co-conspirator."

logic applied to the contract minimum contacts analysis, this Court does not find that Wyoming was the focal point of any alleged tortious conduct by Eagle Creek. As a result, the Court finds that it cannot exercise personal jurisdiction based on CWN's tort claims.

Because Eagle Creek does not have minimum contacts with Wyoming, the Court finds it unnecessary to analyze whether jurisdiction is in accord with traditional notions of substantial justice and of fair play. Additionally, because the Court lacks personal jurisdiction over Eagle Creek, the Court also lacks ancillary jurisdiction over Barta-Iso's cross-claims against Eagle Creek.

### III. Venue

Eagle Creek argues that this Court should dismiss this action based on improper venue. Both Eagle Creek's contract with Barta-Iso and CWN's contract with Barta-Iso contain a neutral forum selection clause that requires disputes arising under or related to the contract to be heard in a neutral state such as, Delaware, Florida, New York, etc. Eagle Creek asserts that pursuant to the principle of mutuality and because CWN seeks to hold Eagle Creek liable under CWN's contract with Barta-Iso, Eagle Creek can enforce the forum selection clause against CWN. Eagle Creek seeks to enforce the forum selection clause against Barta-Iso under their purchase agreement. CWN counters that Eagle Creek is not a party to its contract with Barta-Iso and thus, it cannot enforce the forum selection clause against CWN. The Court finds that Eagle Creek's venue argument is moot based on the Court's finding that it lacks personal jurisdiction over Eagle Creek.

## IV. Transfer or dismissal

Barta-Iso requested that the Court transfer the case to a federal district court where jurisdiction would be proper if the Court found that it lacks personal jurisdiction over Eagle Creek. When a district court determines there is "want of jurisdiction," the issue becomes whether the Court should dismiss the action or transfer it to a district in which the complaint could have been brought originally. 28 U.S.C. § 1631.

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

*Id.* The decision is in the district court's discretion. *Shrader*, 633 F.3d at 1249 ("[S]uch transfers a[re] a discretionary option under 28 U.S.C. § 1631 that should be considered to cure deficiencies relating to personal jurisdiction."). A court considers several factors when deciding whether a transfer is in the interest of justice. These factors include whether the claims would be time-barred if filed in the proper forum, whether the claims have merit, and whether it was clear at the time of filing that the court lacked the requisite jurisdiction. *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008). Here, on balance, these factors favor neither dismissal nor transfer.

Barta-Iso does not suggest which court has personal jurisdiction over CWN's claims against Barta-Iso and Eagle Creek. The Court will use Indiana law for its transfer analysis for the following reasons: (1) the initial discussions regarding the work to the King Air took place in Indiana; (2) the King Air remained in Indiana during all time relevant to the instant case; (3) the repairs were to be performed in Indiana; (4) CWN's employees visited Indiana to discuss the

King Air; and (5) Barta-Iso contacted Eagle Creek, an Indiana corporation, to purchase the King Air.

Against Barta-Iso and Eagle Creek, CWN brings claims of (1) breach of contract; (2) fraud; (3) promissory estoppel; and (4) civil conspiracy.[7] The first factor weighs against transfer. The Court can safely dismiss CWN's claims against Eagle Creek and Barta-Iso because those claims are not yet time-barred in Indiana. (Ind. Code §§ 34-11-2-4, 7, and 11; *see Carter v. State Farm Fire & Cas. Co.*, 850 F. Supp. 2d 946 (S.D. Ind. 2012) (discussing the two-year statute of limitations for a civil conspiracy claim).

The second factor does not weigh in favor of or against transfer. Generally, transfer is not in the interest of justice if, after glancing at the merits based on the record before it, the court concludes the claims lack merit such that transferring the action would serve only to waste judicial resources. *See Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 108 (10th Cir. 2012). Here, the Court cannot determine based on the record whether CWN's claims against Eagle Creek and Barta-Iso have merit.

The third factor weighs in favor of transfer. Like many issues of personal jurisdiction, the Court's decision of whether it could exercise personal jurisdiction over Eagle Creek in this matter was a difficult one. *See Dudnikov*, 514 F.3d at 1070–71. The Court does not find that personal jurisdiction was clear to CWN at the time of filing.

As a result, a balancing of the factors does not provide any guidance for or against a transfer. Because of the neutral result of the balancing test, the Court finds that "in the interest of justice" it will consider the stage of the case in its analysis. This case is set to go to trial on December 15, 2014. There are two motions for summary judgment pending and parties have

---

[7] CWN also brought a claim for specific performance, but stipulated to dismissal of this claim on June 26, 2014.

- 16 -

submitted all of their required pre-trial documents. The Court finds the timing of the case and the parties' preparedness tips the scale in favor of transferring the case to Indiana. With this finding, the Court does not make any findings regarding whether Indiana satisfies the parties' neutral forum provision in the Barta-Iso/Eagle Creek purchase agreement or the CWN/Barta-Iso purchase agreement.

## CONCLUSION

For the reasons discussed above, the Court concludes CWN failed to establish a prima facie case that this Court has personal jurisdiction over Eagle Creek. Consequently, the Court also lacks ancillary jurisdiction over Barta-Iso's claims. Finally, the interests of justice militate transfer to Indiana. Accordingly, it is therefore

**ORDERED** that CWN's Motion to Dismiss (Doc. No. 50), shall be, and hereby is, **GRANTED**. It is further

**ORDERED** this case be transferred to the United Stated Federal District Court, Southern District of Indiana. It is further

**ORDERED** that all other outstanding motions are denied as moot.

Dated this 17th day of November, 2014.

Alan B. Johnson
United States District Judge